UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

VICTORIA J. SNYDER,

           Plaintiff,

v.                                      Case No.  5:07-cv-350-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social Security,

           Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability, disability insurance benefits, and supplemental security income. (Doc. 1.) The Commissioner has answered (Doc. 11), and both parties have filed briefs outlining their respective positions. (Docs. 16 & 17.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

### I. PROCEDURAL HISTORY

On November 5, 2001, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income, alleging a disability onset date of May 1, 2000. (R. 60, 178.) Plaintiff's applications were denied initially and upon reconsideration. (R. 23-28, 31-35, 180-89.) Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 36.) The ALJ conducted Plaintiff's administrative hearing on March 2, 2004. (R. 190-208.) The ALJ issued a decision

unfavorable to Plaintiff on September 24, 2004. (R. 12-21.) Plaintiff's request for review of the hearing decision by the Social Security Administration's Office of Hearings and Appeals was denied on November 9, 2005.  (R. 5-9.)

Plaintiff then filed a complaint in the Ocala Division of the Middle District of Florida.[1] This Court remanded the ALJ's decision to the Commissioner on October 26, 2006. (R. 212, 230-35.) In response to the Court's Order, the Appeals Council vacated the final decision of the Commissioner and remanded the case to an ALJ for the resolution of specific issues as identified by the Court in its Order. (R. 239-41.) The ALJ held a supplemental hearing on May 2, 2007,[2] and issued an unfavorable decision on June 22, 2007.  (R. 212-22.) Plaintiff has now filed her Complaint with this Court appealing the ALJ's June 22, 2007 decision. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[3] Substantial evidence is more than a scintilla in that the evidence must do more than merely "create a suspicion of the existence of [a] fact," and must include "such relevant evidence as a reasonable person would accept as adequate to support the conclusion."[4]

---

[1] Snyder v. Barnhart, No. 5:06-cv-6-Oc-10GRJ (M.D. Fla. Oct. 27, 2006).

[2] (R. 278-310.)

[3] See 42 U.S.C. § 405(g).

[4] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401(1971); Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); accord Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[5] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[6] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[7] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[8] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[9]

---

[5] Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[6] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding court must scrutinize entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding court must also consider evidence detracting from evidence on which Commissioner relied).

[7] Keeton v. Dep't Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[8] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[9] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-.1511.

The ALJ must follow five steps in evaluating a claim of disability.[10] First, if a claimant is working at a substantial gainful activity, she is not disabled.[11] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[12] Third, if a claimant's impairments meet or equal an impairment listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations, she is disabled.[13] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[14] Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[15]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[16] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the

---

[10] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *See* Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[11] 20 C.F.R. § 404.1520(b).

[12] Id. § 404.1520(c).

[13] Id. § 404.1520(d).

[14] Id. § 404.1520(e).

[15] Id. § 404.1520(f).

[16] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

national economy.[17] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[18]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[19] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[20]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[21] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such

---

[17] Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).
In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.
Id. (internal citations omitted).

[18] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). Once the burden shifts to the Commissioner to show that the claimant can perform other work, the grids may come into play. Id.

[19] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[20] Walker, 826 F.2d at 1003.

[21] Wolfe, 86 F.3d at 1077-78.

evidence.[22] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[23]

### III. **SUMMARY OF THE RECORD EVIDENCE**

Plaintiff was born in 1959 and was forty nine (49) years old at the time of the ALJ's final decision on June 22, 2007. (R. 60, 178, 281.) She has a high school equivalency degree and some college education. (R. 72, 282.) She has previous work experience as a waitress and a telemarketer. (R. 67, 282-83.) Plaintiff contends that she has been unable to work since May 1, 2000 due to Hepatitis C and its various associated symptoms. (R. 66.) Plaintiff is insured for benefits through December 31, 2003. (R. 63.)

At step two of the sequential analysis, the ALJ determined that Plaintiff's Hepatitis C is a severe impairment. However, the ALJ determined that Plaintiff's depression and anxiety were non-severe impairments. (R. 218.) The ALJ further found that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations. (R. 218-19.)

The ALJ then went on to find that Plaintiff retained the RFC to perform light and sedentary work. (R. 219.) The ALJ limited Plaintiff to lifting and carrying ten pounds frequently and twenty pounds occasionally, sitting for at least six of eight hours in an

---

[22] *See* Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

[23] *See* Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

6

eight hour work day, standing or walking at least two hours in an eight hour work day. The ALJ also found Plaintiff can occasionally climb ramps or stairs, balance, kneel, crouch, crawl, or stoop, but should avoid exposure to extreme temperatures. Plaintiff had no limitations in pushing, pulling, reaching, or fine or gross manipulation. The ALJ further found that exposure to noise, dust, vibration, humidity, wetness, hazardous machinery, unprotected heights, fumes, chemicals would not pose excessive environmental risk. (R. 218.) After consulting a vocational expert, the ALJ determined that Plaintiff could perform her past relevant work as a telemarketer as it was actually performed and, accordingly, found that Plaintiff was not disabled. (R. 220-21.)

Plaintiff testified that she experiences chronic pain in her side. (R. 87, 303.) She described the pain as an ache that is periodically a sharp and stabbing sensation. (R. 303.) Plaintiff also testified to having constant flu-like symptoms such as chills, aching arms and legs, nausea, dizziness, and fatigue. She attributed all of these symptoms to her hepatitis C diagnosis. (R. 66, 87, 98.)

The record evidence shows that Plaintiff contracted Hepatitis C as a result of a blood transfusion in 1981 that was subsequently diagnosed in 1991 when she attempted to donate blood. (R. 142, 286.) Dr. Anil K. Ram, Plaintiff's treating gastroenterologist, wrote a letter dated March 3, 1997 noting that Plaintiff "does have evidence of hepatitis C virus, RNA but her alpha-fetoprotein[24] [was] within normal limits."

---

[24] Elevated levels of alpha-fetoproteins may be seen in individuals with hepatitis C. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (2007).

Dr. Ram advised that Plaintiff had been scheduled for a liver biopsy to assess the condition of her liver prior to initiating interferon therapy. (R. 128.)

A diagnosis of chronic mild hepatitis was subsequently confirmed by way of a liver biopsy on March 10, 1997. (R. 126-27.) Following her diagnosis, Plaintiff underwent interferon therapy for a few months until she lost insurance coverage and was unable to afford to continue the treatment. (R. 111, 126, 139-42, 288.)

In response to Plaintiff's complaints of joint pain, her physicians recommended she take ibuprofen. (R. 139-42, 154-55.) Plaintiff admitted that her medications helped "mellow the aches." (R. 87A.) Physical examinations of Plaintiff in June 1998, October 1999, May 2000, September 2001, August 2003, and May 2004 were unremarkable. (R. 110-12, 139-42, 154-55, 163-64.) An examination of Plaintiff in 2004 revealed that Plaintiff's weight was "stable." (R. 272.)

In September 2001, Dr. L. A. Oliverio[25] sent Plaintiff for blood testing which revealed high levels of the hepatitis C virus. In response to these results, Dr. Oliverio referred Plaintiff to Dr. Ram for further treatment. (R. 139-42.)

Plaintiff saw Dr. Anil Bhatia in May 2004 for a consultative examination at the request of the Commissioner. Plaintiff presented with chronic complaints of fatigue, pain in her knees, hips, elbows and shoulders, and a low grade fever for the past two years. (R. 163.) Dr. Bhatia's physical examination of Plaintiff was unremarkable but he did note Plaintiff's slow movements and that Plaintiff was cautious when sitting down on the examination table. (R. 163-64, 166.)

---

[25] Dr. Oliverio was Plaintiff's primary care provider from 2001 to 2003. (R. 138-43, 154-59.)

Dr. Billi J. Hatton, Ph. D,[26] examined Plaintiff in May 2004 and rated Plaintiff's global assessment of functioning score at 65-70 (R. 276) suggesting that Dr. Hatton believed Plaintiff was experiencing mild symptoms, "but generally functioning pretty well."[27]

Plaintiff testified that she is capable of driving, grocery shopping, light cooking, and occasional light housekeeping activities. (R. 273, 289-90, 294-95.) She further testified that she had difficulty sitting or standing in one place for more than thirty to forty five minutes at a time. (R. 295-97.) Plaintiff complained of "extreme problems with fatigue." (R. 272.) She takes frequent naps during the day. (R. 163, 272, 287.) According to Plaintiff, if she does not rest between four to six hours during the course of the day, her symptoms worsen. (R. 287.)

In May 2004, Dr. Bhatia completed a Residual Functional Capacity Assessment form and opined that Plaintiff retained the capacity to: lift and carry up to ten pounds frequently and up to twenty pounds occasionally; stand or walk (with normal breaks) for at least two hours in an eight hour work day; sit (with normal breaks) for about six hours in an eight hour work day; and occasionally climb, balance, kneel, crouch, crawl or

---

[26] Dr. Hatton is a licensed psychologist who conducted a consultative psychological clinical examination, Wechsler adult intelligence scale test, and a personality assessment inventory of Plaintiff at the request of the Social Security Administration. (R. 271-77.)

[27] The "global assessment of functioning" is rated on a scale of 0 to 100 and is used by mental health care providers to report their judgment of an individual's overall level of functioning with respect to the individual's psychological, social, and occupational functioning without regard for impairments in functioning due to physical limitations. A person whose score falls between 61 and 70 is described as having "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32, 34 (4th ed. 2000).

stoop. Pursuant to Plaintiff's chronic low grade fever, Dr. Bhatia limited Plaintiff's exposure to extreme temperatures. However, according to Dr. Bhatia, Plaintiff had no additional environmental limitations and no manipulative, visual or communicative limitations. (R. 165-68.)

In September 2004, Dr. Oliverio completed a Residual Functional Capacity Assessment form and opined that, "mainly based on [Plaintiff's] clinical history" of hepatitis C and anxiety, Plaintiff had the ability to: lift and carry less than ten pounds frequently or occasionally; sit, stand or walk (with normal breaks) less than two hours in an eight hour work day; occasionally stoop or climb stairs. However, Plaintiff could never twist, crouch, or climb ladders; and needed to alternate between sitting, standing or walking every five to fifteen minutes. Plaintiff would also need to have the opportunity to lie down at unpredictable intervals approximately five times during a work day and to shift at will from sitting or standing/walking. Additionally, Dr. Oliverio opined that, based on "clinical history as related by [Plaintiff]," Plaintiff was to avoid concentrated exposure to wetness; moderate exposure to humidity, noise, and fumes; and all exposure to extreme temperatures and hazards. Dr. Oliverio noted that Plaintiff needed to take frequent naps during the day. (R. 160-62.)  In a letter dated May 1, 2007, Dr. Oliverio advised that his medical opinion of September 2004 was based on his review of his office notes, objective medical evidence of record, and Plaintiff's subjective complaints. (R. 269.)

In February 2002, a state agency non-examining physician found Plaintiff capable of lifting or carrying twenty five pounds frequently and fifty pounds occasionally;

sitting, standing or walking about six hours in an eight hour work day. Plaintiff was found to have no postural, manipulative, visual, communicative or environmental limitations. The non-examining physician noted that Plaintiff's complaints of severe symptoms and tiredness were greater than would be expected based upon her normal liver function test results, stable weight, and largely normal physical examinations. (R. 130-37.)

In August 2002, a state agency non-examining physician reviewed Plaintiff's medical records and found Plaintiff capable of lifting or carrying ten pounds frequently and twenty pounds occasionally; sitting, standing or walking about six hours in an eight hour work day. Plaintiff was found to have no postural, manipulative, visual, or communicative limitations. Plaintiff's only environmental limitations were to avoid concentrated exposure to fumes and hazards. The physician noted Plaintiff's alleged symptoms were disproportionate to her reported activities of daily living and objective medical findings. (R. 144-50.)

## IV.  **DISCUSSION**

Plaintiff raises three issues in her appeal. The Plaintiff raises two objections to the ALJ's assessment of her RFC. First, she argues that the ALJ's decision not to fully credit her complaints of pain and fatigue was unsupported by substantial evidence. Secondly, she argues that the ALJ failed to give proper weight to the medical opinions of her treating physicians. Lastly, Plaintiff contends that the ALJ erred in relying upon VE testimony that was based upon an improper hypothetical.

As part of Plaintiff's challenge to the ALJ's determination of her RFC, Plaintiff argues that the ALJ improperly discounted her testimony and statements concerning the

11

severity of her symptoms of pain and fatigue. Specifically, Plaintiff argues that the ALJ failed to articulate specific and adequate reasons for discrediting Plaintiff's subjective complaints. In support of her argument, the Plaintiff states "there is a plethora of objective medical evidence" showing Plaintiff has hepatitis C—the medical condition which gives rise to her pain and fatigue complaints. (Doc. 16, p. 14.)

In evaluating a disability, the ALJ must consider all of a claimant's impairments, including her subjective symptoms—such as pain and fatigue—and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.[28] Where, as here, an ALJ decides not to fully credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[29] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[30]

Here, the ALJ specifically referred to the pain standard in his decision. (R. 219.) After determining that Plaintiff's hepatitis C was a medically determinable impairment which "could reasonably be expected to produce the alleged symptoms" of pain and fatigue, the ALJ then went on to find that the *extent* of Plaintiff's alleged symptoms were not fully credible. According to the ALJ, he carefully considered the medical evidence

---

[28] 20 C.F.R. § 404.1528.

[29] Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence); Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

[30] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

and Plaintiff's testimony and concluded that Plaintiff's hepatitis C condition was not of a severity that could reasonably be expected to give rise to the degree of symptoms Plaintiff alleged.[31] The ALJ explained that the objective medical evidence did not support Plaintiff's alleged intensity of pain and fatigue during the relevant period. (R. 221.)

Plaintiff testified to pain in her side and in her joints and "extreme fatigue" which prompted her to take multiple naps during the day. It is not disputed that Plaintiff's hepatitis C viral load was high,[32] but there was substantial evidence that the virus did not cause functional limitations to the extent alleged by Plaintiff. For example, contrary to her claims of disabling pain, during her communications with the Social Security Administration, Plaintiff stated that aspirin and ibuprofen "mellowed" her aches and pains. In addition, the ALJ considered Plaintiff's testimony that she was capable of light cooking, grocery shopping, occasional light housework activities, and driving—activities inconsistent with extreme fatigue.

Plaintiff's medical records also support the ALJ's decision. The biopsy of Plaintiff's liver revealed only mild active chronic hepatitis C. Other than noting Plaintiff's subjective complaints—the clinical findings from Plaintiff's treating physicians were largely unremarkable over the course of nearly six years of regular check ups. In addition to the consistently "normal" physical examinations, liver function tests were also consistently normal.

---

[31] (R. 218-19); see also Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).

[32] "Viral levels as measured by HCV RNA do not correlate with the severity of the hepatitis or with a poor prognosis . . . but viral load does correlate with the likelihood of a response to antiviral therapy." Nat'l Digestive Diseases Information Clearinghouse, Chronic Hepatitis C: Current Disease Management (NIH Pub. No. 07-4230, Nov. 2006) [hereinafter NIH Pub. No. 07-4230].

The ALJ specifically relied upon Dr. Bhatia's assessment of Plaintiff whose examination of Plaintiff's joints and neurological system revealed no abnormalities.[33] The ALJ also pointed to the opinions of two state agency physicians who reviewed Plaintiff's medical records and concluded that the intensity and severity of Plaintiff's symptoms were not supported by objective medical evidence. In February 2002, the reviewing physician noted that Plaintiff's "complaints of severe symptoms and tiredness were greater than would be expected" based upon her normal liver function test results, stable weight, and largely normal physical examinations. A subsequent state agency physician reviewed updated medical records in August 2002 and noted that Plaintiff's "alleged symptoms were disproportionate to her reported activities of daily living and objective medical findings." Thus, the ALJ sufficiently articulated adequate and specific explanations for finding Plaintiff's testimony and subjective statements less than fully credible as to her pain and fatigue and his determination is supported by substantial evidence.

In her second argument on appeal, the Plaintiff argues that substantial evidence does not support the ALJ's decision at step four of the sequential analysis in which he found Plaintiff capable of performing her past relevant work as a telemarketer.[34] In particular, Plaintiff argues that the ALJ improperly rejected the medical opinions of Dr. Oliverio and Dr. Ram in assessing the functional limitations arising from Plaintiff's

---

[33] Notably, none of the examinations revealed any evidence of jaundice, excessive weight loss, muscle atrophy, abdominal swelling, or neuropathy—symptoms normally associated with a more severe liver condition. *See* NIH Pub. No. 07-4230, *supra*.

[34] According to the VE, working as a telemarketer requires the physical demands of sedentary work. (R. 268.)

impairments. With respect to Dr. Ram's medical opinion, the Plaintiff points to a note from Dr. Ram stating "[Plaintiff] is a lady with hepatitis C and wants to be considered for disability" and to a couple of letters written by Dr. Ram in which he notes Plaintiff's diagnosis and Dr. Ram's corresponding recommendation that Plaintiff undergo alpha interferon ribavirin treatment. Plaintiff also argues that Dr. Oliverio's progress notes adequately document her diagnoses as well as her ongoing problems with chronic and severe pain with fatigue. Plaintiff points to Dr. Oliverio's functional assessment report prepared in March 2004 and updated in May 2007[35] in which Dr. Oliverio states that Plaintiff is not capable of performing the physical demands of sedentary work.

In the Eleventh Circuit, the law is clear that a treating physician's opinion on the nature and severity of a claimant's impairments is to be given controlling weight where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record.[36] The ALJ has the discretion to give less weight to a treating physician's opinion or report regarding the

---

[35] Plaintiff also argued that the ALJ "failed to comply with the Appeal Council's remand order in that he did not contact Dr. Oliverio regarding [her] opinion on the Ability to Do Work-Related Activities" report. (Doc. 16, p. 10.) On remand, the Appeal's Council instructed the ALJ as follows:
> If possible, the Administrative Law Judge will recontact Dr. Oliverio and ask [her] to provide additional evidence and/or further clarification of [her] opinion. The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating source.

(R. 240.) In fact, Dr. Oliverio was re-contacted as evidenced by her 2007 letter. (R. 269.) Moreover, the ALJ's decision explicitly discussed all of Dr. Oliverio's findings (R. 215-18) and articulated a specific reason for giving Dr. Oliverio's medical assessment less weight. (R. 220.) Accordingly, the Court concludes Plaintiff's argument lacks merit.

[36] Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997) ("'[G]ood cause' . . . exist[s] where the doctor's opinion [is] not bolstered by the evidence, or where the evidence support[s] a contrary finding" and also where "the doctors' opinions [are] conclusory or inconsistent with their own medical records") (internal citations omitted); *see also* 20 C.F.R. § 404.1527(d) (describing the manner in which the ALJ is to evaluate medical evidence); O'Neal v. Astrue, No. 5:07-cv-143-Oc-10GRJ, 2008 WL 2439885, at *3 (M.D. Fla. June 13, 2008).

claimant's capacity to work if the opinion is wholly conclusory or unsupported by objective medical evidence.[37]  A treating physician's conclusory statements are entitled to only such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.[38]

The ALJ's decision to give greater weight to Dr. Bhatia's opinion is justified because the opinions of Dr. Oliverio and Dr. Ram were not supported by objective medical findings to substantiate their opinions concerning Plaintiff's functional limitations. The ALJ noted that, unlike Dr. Bhatia, Dr. Oliverio relied on Plaintiff's subjective complaints and did not rely upon not any objective medical findings. (R. 220.) In fact, Dr. Oliverio expressly notes on her medical source statement that her assessment of Plaintiff's functional capacity was "mainly based on [Plaintiff's] clinical history" and on the "clinical history as related by Plaintiff."

Medical evidence of record from Dr. Ram consists mostly of diagnoses and does not include much, if any, evidence of functional limitations. In the absence of evidence of functional limitations attributable to a condition, a diagnosis of a condition is insufficient to support a finding of a severe impairment.[39] The only suggestion that Dr.

---

[37] Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991) (ALJ had no obligation to defer to treating physician's report where physician conceded he was unsure of the accuracy of his findings).

[38] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); *see also* Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (finding a treating physician's report may be entitled to less weight if it is unaccompanied by objective medical evidence or is wholly conclusory).

[39] Moore v. Barnhart, 405 F.3d 1208 (11th Cir. 2005); *see also* McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").

Ram attributes any functional limitations to Plaintiff as a result of her hepatitis C is his statement that she "wants to be considered for disability."[40] The Commissioner correctly points out that this notation is neither a statement of opinion concerning whether Plaintiff was disabled nor an assessment of Plaintiff's work-related limitations.

In contrast to the medical evidence from Plaintiff's treating physicians, Dr. Bhatia considered objective medical findings in addition to Plaintiff's clinical history. The ALJ explained that he gave more weight to the opinion of Dr. Bhatia because Dr. Bhatia's functional assessment was based on his observation and examination of Plaintiff—including consideration of Plaintiff's subjective complaints—and was more consistent with that of the state agency non-examining physicians, who specifically based their assessments on objective medical evidence.

In sum, as the fact finder, it is within the ALJ's province to weigh the evidence and make credibility determinations.[41] Where, as here, the ALJ gives adequate explanations for such determinations and his explanations are supported by substantial evidence, there is no legal error for the Court to review.[42] Accordingly, the ALJ did not

---

[40] The Plaintiff also seems to argue that the decision of *Geiger v. Apfel* is applicable here to the extent that it suggests that the ALJ failed to consider the side effects (including fatigue) of Plaintiff's interferon treatment. No. 99-cv-12-ORL-18B, 2000 WL 381920, at *7 (M.D. Fla. Feb. 9, 2000) (holding ALJ erred in failing to consider the side effects of necessary medications such as increased fatigue caused by interferon therapy). However, this argument lacks merit because the record is clear that Plaintiff discontinued interferon treatment well before her disability onset date and there is no evidence Plaintiff re-initiated interferon therapy anytime prior to the date she was last insured. (R. 288.) Accordingly, any side effects associated with her interferon therapy would be irrelevant.

[41] The Court may not decide the facts anew or substitute its own judgment for that of the Commissioner. *See, e.g.*, Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

[42] *See* 42 U.S.C. § 405(g) (factual findings of the Commissioner are conclusive if supported by substantial evidence).

err in his assessment of Plaintiff's RFC because, after careful consideration of all of the evidence (including Plaintiff's subjective complaints), he properly incorporated all functional limitations associated with her impairment that were supported by the evidence.

The last issue Plaintiff raises concerns the hypothetical posed to the VE. The Plaintiff argues that as a result of improperly discrediting the Plaintiff's testimony concerning her pain and fatigue the ALJ erroneously ignored a second hypothetical posed to the VE which included Plaintiff's subjective complaints.

The ALJ is required to describe Plaintiff's educational level, age, work skills, experience, and all of Plaintiff's impairments when presenting a hypothetical question to a VE.[43]  The hypothetical, however, need only include such limitations as are supported by the record.[44]  As discussed above, the ALJ found that although Plaintiff had work-related limitations resulting from Hepatitis C, Plaintiff's subjective complaints were not supported by the medical and other evidence. The ALJ properly concluded that Dr. Bhatia's assessment was an accurate assessment of Plaintiff's work-related limitations. One of the hypotheticals posed to the ALJ included all of these limitations and the ALJ relied upon this assessment in assisting him in reaching his conclusion that Plaintiff could perform her past work as a telemarketer. Accordingly, the ALJ did not err by relying upon this hypothetical rather than a hypothetical posed to the VE that included

---

[43]  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

[44]  See id.

all of Plaintiff's subjective complaints, which the ALJ had properly concluded were not credible.

## V. CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 30, 2008.

GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel